UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-61815-CIV-COHN/Snow

RAY BERRY and ROBERT JOHN,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

BUDGET RENT A CAR SYSTEMS,
INC., a Delaware corporation,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Lawrence D. Silverman, Esq.
Scott B. Cosgrove, Esq.
AKERMAN **SENTERFITT**
One S.E. Third Avenue, Ste. 2800
Miami, FL  33131

*ATTORNEYS FOR THE DEFENDANTS*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

I.      NEITHER NEW JERSEY LAW, NOR THE "SUBSTANTIALLY
        SIMILAR CONSUMER FRAUD LAWS OF CERTAIN STATES"
        APPLY TO PLAINTIFFS' CLAIMS (COUNTS I & IV) .................................... 3

        A.      The Place Where the Alleged Injury Occurred ........................................... 5
        B.      The Place Where the Conduct Causing the Injury Occurred ..................... 5
        C.      The Domicil, Residence, Place of Incorporation and Place of
                Business .................................................................................................... 6
        D.      The Place Where the Relationship Between the Parties is Centered .......... 7

II.     THE VOLUNTARY PAYMENT DOCTRINE BARS PLAINTIFFS'
        CLAIMS (COUNTS II, III, V & VI) ............................................................... 7

III.    THE CRF DOES NOT VIOLATE FLORIDA OR NORTH CAROLINA
        CONSUMER PROTECTION LAW (COUNTS II-III) ......................................... 9

        A.      Plaintiffs' 'Deception By Omission' Theory Fails As a Matter of
                Law ......................................................................................................... 11
        B.      The CRF Is Not An Unfair Fee ............................................................... 13

IV.     PLAINTIFFS' QUASI-CONTRACTUAL CLAIMS FAIL (COUNTS V-
        VI) ........................................................................................................... 15

CONCLUSION ........................................................................................................... 16

CERTIFICATE OF SERVICE ...................................................................................... 17

{M2509375;2}

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brooks v. Blue Cross and Blue Shield of Florida*, Inc.,
   116 F.3d 1364 (11th Cir. 1997) .................................................................................. 12

*Cannon v. Metro Ford, Inc.*,
   242 F. Supp. 2d 1322 (S.D. Fla. 2002) ...................................................................... 11

*Garcia v. Cosicher*,
   504 So. 2d 462 (Fla. 3d DCA 1987 ........................................................................... 16

*Guerry v. American Trust Co.*,
   68 S.E. 2d 272 (N.C. Sup. Ct. 1951)........................................................................... 8

*Harding Realty, Inc. v. Turnberry Towers Corp.*,
   436 So. 2d 983 (Fla. 3d DCA 1983) .......................................................................... 15

*Hassen v. Mediaone of Greater Florida, Inc.*,
   751 So. 2d 1289 (1st DCA 2000) ................................................................................ 8

*Huston v. Rexall Sundown, Inc.*,
   837 So. 2d 1090 (Fla. 4th DCA 2003) ........................................................................ 5

*Ilah Coffee Merriman and NCNB Texas National Bank v. Convergent Business
Systems, Inc.*,
   1993 WL 989418 (N.D. Fla. 1993)................................................................... 4, 5, 6, 7

*In re Summit Place, LLC*,
   298 B.R. 62, 74 (Bankr. W.D.N.C. 2002) .................................................................. 13

*Marshall v. Miller*, 276 S.E.2d 397 (N.C. 1981) ........................................................... 10

*McMullen v. Inland Realty Corp.*,
   113 Fla. 476 (Fla. 1933).............................................................................................. 8

*Merrill Lynch Bus. Fin. Servs. v. Performance Mach. Sys. U.S.A.*,
   No. 104-60861, 2005 U.S. Dist. LEXIS 7309 (S.D. Fla. March 4, 2005)............. 11, 15

*Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*,
   761 So. 2d 1256 (Fla. 3d DCA 2000) ........................................................................ 10

*Occidental Life Ins. Co. of North Carolina v. Pay Ryan & Assocs., Inc.*,
   496 F.2d 1255 (4th Cir. 1974) ................................................................................... 16

*Robinson v. Avis Rent A Car System, Inc.*,
  22 P.3d 818 (Wash. Ct. App. 2001) ........................................................... 14

*Rosa v. Amoco Oil Co.*,
  *262 F. Supp. 2d 1364 (S.D. Fla. 2003)* ...................................................... 13

*Sanchez v. Time Warner, Inc.*,
  1998 WL 834345, *2 (M.D. Fla. Nov. 4, 1998),
  *aff'd on rehearing,* 1999 WL 1338446 (M.D. Fla. Sep. 27, 1999) ............................ 8, 9

*Speyer v. Avis Rent A Car Systems, Inc.*,
  415 F. Supp. 2d 1090 (S.D. Cal. 2005) ............................................... 14, 15

*State Farm Mutual Automobile Ins. Co. v. Atlantic Indemnity Co.*,
  468 S.E. 2d 570 (N.C. Ct. App. 1996) .................................................. 16

*Thunderwave, Inc. v. Carnival Corp.*,
  954 F. Supp. 1562 (S.D. Fla. 1997) ................................................... 15

*Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*,
  92 F.3d 1110 (11th Cir. 1996) ...................................................... 3, 4

*Webster v. Royal Caribbean Cruises, Ltd.*,
  124 F. Supp. 2d 1317 (S.D. Fla. 2000) ................................................ 16

*Ziemba v. Cascade Inter., Inc.*,
  256 F.3d 1194 (11th Cir. 2001) ..................................................... 12

*Zlotnick v. Premier Sales Group, Inc.*,
  *431 F. Supp. 2d 1290 (S.D. Fla. 2006)* ............................................... 13

**Statutes**

15 U.S.C. § 45 *et seq.*, Federal Trade Commission Act, ................................... 9

Fla. Stat. § 501.204 ................................................................... 10

N.C. Stat. § 75-1.1 ................................................................... 10

**Other Authorities**

RESTATEMENT (SECOND) of CONFLICT of LAWS ......................................... 3, 4, 6

{M2509375;2}

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................... 11, 12

**Regulations**

C.F.R. § 251.58 ............................................................................................................. 15

## INTRODUCTION

This case is about a nominal, expressly disclosed, $3.00 Cost Recovery Fee ("CRF"), which Budget Rent-A-Car Systems, Inc. ("Budget") charged to plaintiffs Ray Berry and Robert John (collectively, "Plaintiffs").  The CRF is a standard rental vehicle industry fee that is charged to recover vehicle licensing and registration fees.  Plaintiffs, who do not dispute notice of the CRF, complain that the fee is "deceptive" or "unfair" because the CRF is an overhead expense that should be included in the daily rental rate. In short, they are unhappy that the fee is a separate line item charge.  However, there is nothing "deceptive" or "unfair" about separating out this charge, and Plaintiffs' personal preference cannot create liability where it does not otherwise exist.

Before addressing the specific reasons for dismissal, a brief recitation of the underlying facts, as articulated by Plaintiffs, is necessary.  The Class Action Complaint (the "Complaint) alleges that Budget engages in deceptive and unfair business practices due to the imposition of a CRF.  Compl., ¶ 1.  The CRF is a $3.00 per day fee, charged to recoup Budget's costs of licensing and registering its truck fleet.  Compl., ¶ 13.  Plaintiffs allege that this fee is "deceptive" because Budget "conceal[ed] and omitt[ed] material information known to [Budget] in order to induce Plaintiffs and other Class members to pay for and/or not question the CRF described herein."  Compl., ¶ 39.  Plaintiffs also allege that a separate line item charge for the CRF is "unfair" because the CRF is part of Budget's overhead expense.  Compl. ¶ 13.

Based on these allegations, Plaintiffs filed claims for (i) violation of the New Jersey Consumer Fraud Act, (ii) violation of Florida Deceptive and Unfair Trade Practices Act, (iii) violation of North Carolina Unfair and Deceptive Trade Practices Act, (iv) violation of Substantially Similar Consumer Fraud Laws of Certain States, (v) Unjust

{M2509375;2}

1

Enrichment, and (vi) Money Had and Received.  Plaintiffs' claims fail as a matter of law for a number of reasons.

Preliminarily, Plaintiffs' claims under the New Jersey Consumer Fraud Act (Count I) and Substantially Similar Consumer Fraud Laws of Certain States (Count IV) require dismissal because there is no basis to apply New Jersey law or "substantially similar consumer fraud law of certain states."  Plaintiffs are residents of Florida and North Carolina who rented trucks from Budget in their respective resident states. Accordingly, the consumer protection laws of Florida and North Carolina apply to Plaintiffs' claims.  (*See* Point I, *infra*).

Plaintiffs' remaining claims (Counts II, III, V & VI) fail because Plaintiffs paid the CRF without objection.  A customer, confronted with a charge that he or she believes is illegal, has an obligation to protest the fee at the time it is presented; otherwise, he is barred from later litigating the claim.  (*See* Point II, *infra*.)

Plaintiffs also fail to show how the imposition of the CRF is deceptive or unfair (Counts II-III).  Plaintiffs allege that the CRF is "deceptive" because Budget "conceal[ed] and omitt[ed] material information known to [Budget] in order to induce Plaintiffs and other Class members to pay for and/or not question the CRF described herein."  Compl., ¶ 39.  This theory of deception fails to state a claim because (i) Plaintiffs do not satisfy the pleading with particularity requirement of Federal Rule of Civil Procedure 9(b), and (ii) regardless, the rental contract's express disclosures negate any possible theory of deception.  (*See* Point III.A, *infra*).

Plaintiffs also theorize that the CRF is unfair because it is charged separately from the daily rental rate.  Compl., ¶ 13.  There is nothing unfair about separating out a charge,

and Plaintiffs' theory has already been expressly rejected by existing case law. (*See* Point III.B, *infra*).

Finally, Plaintiffs seek to recover the CRF based on quasi-contractual theories (Counts V and VI).  Quasi-contractual claims fail where an express contract exists – and all parties agree to the existence of an express contract.  (*See* Point III, *infra*).

There is simply nothing illegal or improper about the CRF, and Plaintiffs' Complaint should be dismissed in its entirety.

## I.   NEITHER NEW JERSEY LAW, NOR THE "SUBSTANTIALLY SIMILAR CONSUMER FRAUD LAWS OF CERTAIN STATES" APPLY TO PLAINTIFFS' CLAIMS (COUNTS I & IV)

Plaintiffs are residents of Florida and North Carolina who rented trucks from Budget in their respective resident states.  *See* Compl., ¶¶ 5-6, 8, 10.  In addition to bringing claims under Florida and North Carolina consumer protection law, however, Plaintiffs are attempting recovery under the New Jersey Consumer Fraud Act (Count I) and "substantially similar consumer fraud law of certain states" (Count IV).  Neither New Jersey law, nor the ill-defined "law of certain states," applies to Plaintiffs' claims, and Counts I and IV must therefore be dismissed.

To determine the choice of law for tort-based claims (such as the consumer fraud claims at issue in Counts I and IV), Florida courts apply the "significant relationship" test.  *See Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115-16 (11th Cir. 1996).[1]  The significant relationship test adopted by the Florida courts is articulated in the RESTATEMENT (SECOND) of CONFLICT of LAWS § 145:

---

[1] "[A] federal court sitting in diversity must apply the choice of law rules of the forum state."  *Trumpet Vine*, 92 F. 3d at 1115.

(1)  The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles state in § 6.[2]

(2)  Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a)  the place where the injury occurred,
> (b)  the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d)  the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

See Trumpet Vine, 92 F.3d at 1118; see also Ilah Coffee Merriman and NCNB Texas

National Bank v. Convergent Business Systems, Inc., 1993 WL 989418 (N.D. Fla. 1993)

(choice of law analysis mandated application of Florida's Deceptive and Unfair Trade

Practices Act, and rejection of the Texas Deceptive Trade Consumer Protection Act.").[3]

---

[2] RESTATEMENT (SECOND) of CONFLICT of LAWS § 6 provides:
1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
> a) the needs of the interstate and international systems,
> b) the relevant policies of the forum,
> c) the relevant policies of other interested states and relative interests of those states in the determination of the particular issue,
> d) the protection of justified expectations,
> e) the basic policies underlying the particular field of law,
> f) certainty, predictability and uniformity of result, and
> g) ease in the determination and application of the law to be applied.

[3]  The contract at issue in Ilah Coffee contained a choice of law provision providing for the application of Florida law.  The choice of law provision, however, had no bearing on the deceptive trade practices claim.  Id. at * 3 ("choice of law provisions in contracts generally will not control the applicable law for tort claims between the contracting parties.").

An analysis of the choice of law factors articulated above make it abundantly clear that Florida law applies to plaintiff Berry's claims, and North Carolina law applies to plaintiff John's claims.

### A.    The Place Where the Alleged Injury Occurred

The first factor to consider is "the place where the injury occurred." *Ilah Coffee,* 1993 WL 989418 at * 8.   In consumer fraud cases such as this, the alleged injury is deemed to have occurred in the place where payment is made.  *See, e.g., Huston v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1094 (Fla. 4th DCA 2003) (holding that a consumer who purchased a vitamin supplement with a false and misleading label was injured at the point of sale).

According to the Complaint, plaintiff Berry paid a CRF in Florida, and plaintiff John paid a CRF in North Carolina.  *See* Complaint, ¶¶ 8-11.  Thus, Plaintiffs' alleged injuries are deemed to have occurred in Florida and North Carolina.

### B.    The Place Where the Conduct Causing the Injury Occurred

The second factor is "the place where the conduct causing the injury occurred." *Ilah Coffee,* 1993 WL 989418 at * 8.   In an unfair trade practice case, the "conduct causing the injury" occurs at the point of sale.  *See Rexall Sundown*, 837 So. 2d at 1094.

For example, *Rexall Sundown* involved a putative class action claim in which the plaintiff alleged that a manufacturer of calcium supplements violated Florida's Deceptive and Unfair Trade Practices Act by misrepresenting the milligram count on the label.  *Id.* at 1090.   The trial court denied the plaintiff's motion to certify a nationwide class because, among other things, "common questions of law would not predominate because the laws of 49 other states would apply to the claims of non-residents."  *Id.* at 1093.   The trial court's decision was affirmed on appeal, and the appellate court held that the

conduct causing the injury occurred at the point of sale – not the state where the label was written.  *See Rexall Sundown* 837 So. 2d at 1094 ("the alleged deceptive unfair trade practice involved the  nationwide sale of products with a misleading label and with misleading marketing techniques.  . . .   The alleged wrong was committed, and the damage done, at the site of sale . . .").

In this case, Plaintiffs allege that Budget violated consumer protection laws by concealing "material information" regarding the CRF, and by making the CRF a separate line item charge.  *See* Complaint, ¶¶ 9-13, 32, 39.  The alleged "material information" was concealed, and the CRF paid, at the point of sale (*e.g.,* Florida and North Carolina).

Moreover, because the injury occurred at the point of sale (*supra* Point I.A.) and the conduct causing the alleged injury occurred at the point of sale, there is a strong presumption of the application of Florida law for plaintiff Berry's claims, and North Carolina law for plaintiff John's claims.  *See* RESTATEMENT (SECOND) of CONFLICT of LAWS, cmt e.  ("When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort.").

**C.     The Domicile, Residence, Place of Incorporation and Place of Business**

The third factor is "the domicile, residence, nationality, place of incorporation and place of business of the parties."  *Ilah Coffee,* 1993 WL 989418 at *8.  Plaintiff Berry is a citizen of Florida, *see* Compl. ¶ 5, and plaintiff John is a citizen of North Carolina.  *Id.* at ¶ 6.  Budget, on the other hand, is a Delaware corporation with its principal place of business in New Jersey.  *Id.* at ¶ 7.  This factor, at best, is neutral.

### D.      The Place Where the Relationship Between the Parties is Centered

The final  factor is "the place where the relationship, if any, between the parties is centered." *Ilah Coffee,* 1993 WL 989418 at *8.  This factor is particularly important, and, "[a]s a general rule, the issue of non-disclosure in contract negotiation and formation is appropriately resolved according to the law of the state where the negotiation took place and where the contract was formed." *Id*. at *9.

Here, plaintiff Berry and plaintiff John visited Budget stores in Florida and North Carolina, respectively.  *See* Compl., ¶¶ 8, 10.  During their visits to the Budget stores, Plaintiffs formed and executed contracts, and paid the CRF. *Id.* at Exs. 1-2.  At the conclusion of the rental period, the vehicles were returned in Florida and North Carolina. *Id.*  There is no suggestion in the Complaint that Plaintiffs have any ties to New Jersey, or any state other than their own.  Thus, this factor also weighs in favor of the application of Florida and North Carolina law.

Because three factors weigh heavily in favor of Florida and North Carolina law (and one factor is neutral), Florida law should be applied to plaintiff Berry's claims, North Carolina law should be applied to plaintiff John's claims, and the claims under New Jersey law and the laws of other states should be dismissed.

## II.     THE VOLUNTARY PAYMENT DOCTRINE BARS PLAINTIFFS' CLAIMS (COUNTS II, III, V & VI)

Plaintiffs' remaining claims should be dismissed because Plaintiffs paid the CRF at the time the charge was presented without objection.  *See* Compl., ¶¶ 9, 11, Exs. A-B.  A consumer has a duty to protest a charge he finds objectionable, otherwise, the Voluntary Payment Doctrine bars him from later litigating the claim.

{M2509375;2}

7

The Voluntary Payment Doctrine provides that a party making a voluntary payment of a sum under a claim of right cannot later sue to recover the payment claiming that it was wrongful.  *See, e.g., McMullen v. Inland Realty Corp.*, 113 Fla. 476 (Fla. 1933); *Hassen v. Mediaone of Greater Florida, Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000) (affirming entry of judgment on pleadings due to plaintiffs' failure to object to fees paid).[4]

This doctrine recognizes that it is unfair for a party to acquiesce to a demand for payment, make such a payment without ever protesting or complaining, and later litigate the claim:

> It is a well-recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, <u>and this is true even though the claim thus paid was illegal</u>; the theory of law being that if a party would resist an unjust demand, he must do so at the threshold, and such resistance should precede payment.

*Sanchez v. Time Warner, Inc.*, 1998 WL 834345, *2 (M.D. Fla. Nov. 4, 1998) (emphasis supplied), *aff'd on rehearing,* 1999 WL 1338446 (M.D. Fla. Sep. 27, 1999).

*Sanchez* illustrates how this doctrine is applied.  The plaintiff was a Cablevision subscriber who claimed that the assessment of a $6.00 late charge was an illegal charge because the amount of the late fee was wholly unrelated to the actual damages suffered by Cablevision.  *Sanchez*, 1998 WL 834345 at *1.  Cablevision filed a motion to dismiss, arguing that the voluntary payment doctrine barred the plaintiff's claims.

---

[4] Like Florida, North Carolina recognizes the Voluntary Payment Doctrine.  *See, e.g., Guerry v. American Trust Co.,* 68 S.E. 2d 272, 275 (N.C. Sup. Ct. 1951) ("the voluntary acts of plaintiff and his testator in making the repairs and paying for the same without notice to or demand upon the tenant constitute a waiver in the nature of an estoppel."). Therefore, this analysis applies equally to Plaintiffs' claims.

The subscriber opposed the motion to dismiss, arguing that the payment was not truly voluntary because she did not know of the facts underlying the fee.  The court rejected the plaintiff's argument, holding that the issue is knowledge of the imposition of the fee – not the underlying facts:

> Contrary to plaintiff's assertions, the issue is not whether plaintiff paid the late fees without knowledge that it was grossly disproportionate to Defendants' actual damages.  The issue is whether she had knowledge that she had agreed to pay a late fee at the time she paid it.

*Sanchez*, 1999 WL 1338446 at *1.

In this case, Plaintiffs executed rental contracts with Budget.  The imposition of the CRF was conspicuous on the face of each rental contract, and Plaintiffs paid the fees without objection.  *See* Compl., Exs. A-B.  Plaintiffs do not allege that they were unaware of the fees (nor could they), but instead allege that (i) Budget did not disclose "material facts," and (ii) the CRF should not be a separate line item charge because licensing and registering are overhead costs that should be included in the daily rental rate.  Compl. ¶¶ 12-13.  The allegations are irrelevant.  The sole question "is whether [Plaintiffs] had knowledge that [they] had agreed to pay [the CRF] at the time [they] paid it."  *Sanchez*, 1999 WL 1338446 at *1.  The only answer to that question is yes, and Plaintiffs' claims must therefore be dismissed.

## III.   THE CRF DOES NOT VIOLATE FLORIDA OR NORTH CAROLINA CONSUMER PROTECTION LAW (COUNTS II-III)

State consumer protection laws are the progeny of the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq.*, which makes it unlawful for "unfair or deceptive acts or practices in or affecting commerce . . ."  The state consumer protection statutes, or "little FTC Acts," are practically identical to their FTC counterpart, but differ in that they create

a private cause of action for the consuming public.  The Florida and North Carolina statutes prohibit deceptive or unfair business practices by, in relevant part, providing:

> (1)  Unfair method of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Fla. Stat. § 501.204

> (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful.

N.C. Stat. § 75-1.1.

A deceptive practice is one in which "there is a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000).[5]  To meet this standard of deception:

> the [plaintiff] must show probable, not possible, deception ("likely to mislead," not "tendency to mislead").  Second the [plaintiff] must show potential deception of "consumers acting reasonably in the circumstances, not just and consumers.  Third, the new standard considers as material only deceptions that are likely to cause injury to a reasonable relying consumer, whereas the old standard reached deceptions that a consumer might have considered important, whether or not there was reliance."

*Id.* at 1263 (citations omitted).

---

[5] This standard for deceptive conduct is derived from a federal court interpretation of the FTC Act, *see Millennium Communications*, 761 So. 2d at 1263, and Florida's Deceptive and Unfair Trade Practices Act requires direct reference to the FTC Act for its interpretation.  *See, e.g.*, Fla. Stat. § 501.204(2).  North Carolina's consumer protection act, on the other hand, does not expressly mandate reference to the FTC Act for interpretation.  Nevertheless, North Carolina courts look to federal decisions interpreting the FTC Act for guidance in determining the scope and meaning of North Carolina's consumer protection act.  *See Marshall v. Miller*, 276 S.E.2d 397, 399 (N.C. 1981).

An "unfair practice," on the other hand, is one that "offends established public policy, and . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Merrill Lynch Bus. Fin. Servs. v. Performance Mach. Sys. U.S.A.,* No. 104-60861, 2005 U.S. Dist. LEXIS 7309 (S.D. Fla. March 4, 2005) (dismissing FDUTPA claim because allegations were insufficient to establish unfair trade practice).

As discussed below, there is no possibility of finding deceptive or unfair conduct in connection with the CRF, and Plaintiffs' unfair competition claims must be dismissed.

A.      **Plaintiffs' "Deception By Omission" Theory Fails As a Matter of Law**

Plaintiffs' theory of deception is premised on the vague allegation that Budget omitted "material information," which somehow induced Plaintiffs to pay the CRF. Specifically, Plaintiffs allege that Budget "conceal[ed] and omitt[ed] material information known to [Budget] in order to induce Plaintiffs and other Class members to pay for and/or to not question the CRF described herein." Compl., ¶ 39.  This theory of deception fails to state a claim because (i) Plaintiffs do not satisfy the pleading with particularity requirement of Federal Rule of Civil Procedure 9(b), and (ii) regardless, the rental contract's express disclosures negate any possible theory of deception.

Federal Rule of Civil Procedure 9(b)  requires that all fraud-based claims (including consumer fraud claims) be pled with particularity:

> (b)      Fraud, Mistake, Condition of the Mind.  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. . . .

*Id.*  Because consumer fraud claims are fraud-based, they must comply with Rule 9. *See, e.g., Cannon v. Metro Ford, Inc.,* 242 F. Supp. 2d 1322, 1332 (S.D. Fla. 2002) (dismissing FDUPTA claims because the plaintiff failed to plead fraud with particularity).

Rule 9(b) requires specific allegations, including "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants have obtained as a consequence of the fraud." *Ziemba v. Cascade Inter., Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (affirming trial court's dismissal of complaint) (citation and internal quotation omitted). The allegations must be sufficiently specific to put the defendants on notice of the precise conduct with which they are charged to ensure that they have sufficient information to frame a response. *Brooks v. Blue Cross and Blue Shield of Florida*, Inc., 116 F.3d 1364, 1382 (11th Cir. 1997).

Here, Plaintiffs offer a single allegation (repeated virtually verbatim in Counts I, II and III) to support their theory that the CRF is a deceptive charge: "Defendant violated [consumer protection laws] by, *inter alia*, concealing and omitting material information known to Defendant in order to induce Plaintiffs and other class members to pay for and/or to not question the CRF described herein." Compl. ¶ 39. This allegation falls well-short of the particularity standard set forth in Rule 9(b) because it does not identify (i) the precise material omissions, (ii) how the material omissions deceived Plaintiffs, and (iii) how the alleged omission resulted in harm to Plaintiffs.

Plaintiffs' deception by omission theory must be dismissed for the additional reason that it cannot be squared with the plain language of the contract. Because the CRF is a mandatory fee, there are only two material facts that should be disclosed, to wit: (i)

Budget imposes a CRF, and (ii) the amount of the CRF.  The rental contract at issue expressly discloses both these facts:

| Rental Information | Rates and Charges | |
|---|---|---|
| | Daily Rate | Weekly Rate |
| 15' PARCEL VAN GAS | 34.95 | 244.65 |
| Mileage Rate | 0.7900/MI | |
| FULL VALUE OF TRUCK | 0.00 | 0.00 |
| STD STATE LIMITS | 0.00 | 0.00 |
| **Cost Recovery Fee** | **3.00** | **21.00** |

Compl., Ex. A (emphasis in bold).

Given these disclosures, it is patently obvious that the Plaintiffs were aware of the CRF and the "deception by omission" theory is untenable.  *See, e.g., Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368 (S.D. Fla. 2003) (granting motion to dismiss FDUTPA claim where allegation contradicted by written agreement); *Zlotnick v. Premier Sales Group, Inc.*, 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006) (same).[6]

**B.     The CRF Is Not An Unfair Fee**

Plaintiffs also theorize that the CRF constitutes an unfair trade practice because the CRF is charged separately from the daily rental rate (a practice commonly known as "unbundling"), and Plaintiffs feel the CRF should be included in the daily rental rate. Compl., ¶ 13.  There is nothing unfair about unbundling charges, however, and Plaintiffs' personal preference for bundled fees cannot create liability where it does not otherwise exist.

---

[6] North Carolina law is consistent with Florida law.  *See In re Summit Place, LLC*, 298 B.R. 62, 74 (Bankr. W.D.N.C. 2002) (where terms of transaction are set out in writing, there is nothing "deceptive" under North Carolina's Unfair and Deceptive Trade Practices Act).

Unbundling is common in many industries (*e.g.,* telephone companies, cable companies, etc.).  In fact, Plaintiffs' exact theory of the unfairness has already been twice tested and twice rejected.  *See Speyer v. Avis Rent A Car Systems, Inc.*, 415 F. Supp. 2d 1090 (S.D. Cal. 2005) (granting motion to dismiss because a separate line item charge for airport concession recovery fees did not violate California Unfair Competition Law); *Robinson v. Avis Rent A Car System, Inc.*, 22 P.3d 818 (Wash. Ct. App. 2001) (unbundling airport concession recovery fees did not violate Washington Consumer Protection Act).

*Speyer* involved a putative class action claim against Avis Rent A Car Systems, Inc. and Budget Rent A Car Systems, Inc. (collectively, the "Rental Car Companies") for alleged violations of, among other things, California's Unfair Competition Law.  The plaintiffs alleged that the Rental Car Companies separately charged (unbundled) an airport concession recovery fee, which was intended to recover a fee assessed by airports for the right to operate rental car facilities at airport locations.  *Id.* at 1092.  The plaintiffs' claim was premised on the allegation that:

> Defendants have engaged in "unfair" business practices in that they "quote and charge a base rental rate <u>and</u> a separate additional airport concession recovery fee.  When Defendants impose such surcharges on their customers, it is merely a means for them to bill separately for part of their overhead and it misleads customers about the true rental rate."

*Id.* at 1098 (emphasis in original).

The Rental Car Companies moved to dismiss the plaintiffs' claims on the grounds that, among other things, there is nothing unfair about unbundling the concession fee.  *Id.* at 1099.  The trial court agreed with the Rental Car Companies, and dismissed the plaintiffs' complaint, with prejudice:  "Because Defendants disclose the concession fees,

as well as the total cost of the rental, Plaintiffs' allegation that Defendants' practices are unfair under the [Unfair Competition Law] lacks merit." *Id*. at 1199-00.

Moreover, the practice of unbundling is so commonplace that the federal government itself unbundles cost recovery fees.  For example, the Forest Service charges consumers use and occupancy fees for the use of national forest land, and separately charges a cost recovery fee to address overhead administrative expenses:  "The Forest Service shall assess fees to recover the agency's processing costs for special use applications and monitoring costs for special use authorizations. . . . Cost recovery fees are separate from any fees charged for the use and occupancy of National Forest System lands." C.F.R. § 251.58 (emphasis supplied).  Given the federal government's practice of unbundling cost recovery fees, it is impossible to find that Budget's imposition of a CRF as a separate line item charge "offends established public policy," or "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Merrill Lynch,* 2005 U.S. Dist. LEXIS 7309 (S.D. Fla. March 4, 2005).

## IV.  PLAINTIFFS' QUASI-CONTRACTUAL CLAIMS FAIL (COUNTS V-VI)

In Counts V and VI of the Complaint, Plaintiffs seek to recover damages against Budget based on theories of unjust enrichment and monies had and received.  These quasi-contractual claims must fail because all parties admit to the existence of an express contract.  *See* Compl., Exs. A-B.

"[U]pon a showing that an express contract exists, [a] quasi-contract claim fails." *Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997).  This rule is established in a long and unbroken line of cases.  *See, e.g., Harding Realty, Inc. v. Turnberry Towers Corp.*, 436 So. 2d 983, 984 (Fla. 3d DCA 1983) ("the law will not imply a contract where a valid express contract exists."); *Garcia v. Cosicher*, 504 So. 2d

462 (Fla. 3d DCA 1987 (same); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (dismissing unjust enrichment claim when the plaintiff "admitted to the existence of an express contract between the parties" and submitted a contract to the court).[7]

Therefore, Counts V and VI should be dismissed.

## CONCLUSION

In light of the foregoing, Defendant Budget Rent A Car Systems, Inc. respectfully requests that the Court (i) dismiss the Complaint with prejudice, and (ii) grant such other and further relief to Budget Rent A Car Systems, Inc. as the Court deems just and proper.

Respectfully submitted,

**AKERMAN SENTERFITT**
One Southeast Third Avenue, 28th Floor
Miami, FL  33131-1714
Telephone:  (305) 374-5600
Facsimile:   (305) 374-5095


    s/ Scott B. Cosgrove         
Lawrence D. Silverman
Florida Bar No. 0007160
Lawrence.Silverman@akerman.com
Scott B. Cosgrove
Florida Bar No. 0161365
Scott.Cosgrove@akerman.com

---

[7] North Carolina law and Florida law are consistent on this issue.  *See, e.g., Occidental Life Ins. Co. of North Carolina v. Pay Ryan & Assocs., Inc.,* 496 F.2d 1255, 1267 (4th Cir. 1974) (under North Carolina law, a contract will not be implied where an express contract exists); *State Farm Mutual Automobile Ins. Co. v. Atlantic Indemnity Co.*, 468 S.E. 2d 570, 574 (N.C. Ct. App. 1996) ("If there is an [actual] contract between the parties the contract governs the claim and the law will not imply a contract.") (brackets in original, citations omitted).

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the document is being served on the following persons in compliance with CM/ECF requirements which generate service through cmecfautosender@flsd.courts.gov, or, where appropriate, via U.S. Mail:

Tod Aronovitz, Esq.                              Paul M. Weiss, Esq.
Aronovitz Trial Lawyers                          Freed & Weiss LLC
Suite 2700 – Museum Tower                        111 West Washington Street
150 W. Flagler Street                            Suite 1331
Miami, Florida 33130                             Chicago, Illinois 60602
(305) 375-0243 Facsimile                         (312) 220-7777 Facsimile

Stephen A. Dunn, Esq.
Emanuel & Dunn, PLLC
130 South Salisbury Street
Raleigh, North Carolina 27601
(919) 832-6731 Facsimile


                                        s/ Scott B. Cosgrove
                                        Scott B. Cosgrove