UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-61815-CIV-COHN/SNOW

RAY BERRY and ROBERT JOHN,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

v.

BUDGET RENT A CAR SYSTEMS,
INC., a Delaware corporation,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT

**THIS CAUSE** is before the Court upon Defendant Budget Rent a Car Systems, Inc.'s Motion to Dismiss Complaint and Incorporated Memorandum of Law [DE 16]. The Court has considered Defendant's Motion, Plaintiff's Memorandum of Law in Opposition [DE 22], Defendant's Reply Memorandum [DE 28], and the supplemental materials filed under seal [DE 41], and is otherwise duly advised in the premises.

**I.**    **INTRODUCTION**

Plaintiffs Ray Berry and Robert John bring this class action Complaint against Defendant Budget Rent a Car Systems, Inc. ("Budget"), alleging that Budget's practice of adding an additional cost recovery fee ("CRF") to the daily rental rate charged to customers violates the New Jersey Consumer Fraud Act, the Florida Deceptive and Unfair Trade Practices Act, the North Carolina Unfair and Deceptive Trade Practices Act, and substantially similar consumer fraud laws in certain other states. Plaintiffs also assert counts for unjust enrichment and money had and received.

According to the allegations in Plaintiffs' Complaint, Budget automatically assesses a CRF in the amount of $3.00 per day in addition to the daily rental charge. Plaintiffs claim that this CRF is a "hidden profit center" for Budget, rather than a legitimate means of recouping the cost of licensing and registering its fleet of rental vehicles, because the amount of the fee grossly exceeds the actual cost of vehicle registration and licensing and those costs are already included in the daily rental rates.

Plaintiff Ray Berry executed a rental contract with Budget in Hallandale Beach, Florida on September 6, 2006. Plaintiff Robert John executed a rental contract with Budget in Havelock, North Carolina on September 22, 2006. Both contracts were for rental of a van, and both contracts disclosed the imposition of the CRF. Budget is a Delaware corporation with its principal place of business in Parsippany, New Jersey.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S. Ct. at 1965.[1] "While a complaint attacked

---

[1] The Court notes that both the Complaint in this matter and the Motion to Dismiss were filed prior to the Twombly decision. However, because the Court

2

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. APPLICABLE LAW

As a threshold matter, the Court must determine what law applies to Plaintiffs' claims before it can evaluate whether Plaintiffs' Complaint states a valid cause of action. Plaintiffs argue that the choice of law issue is premature at this stage in the litigation, and that the Court should defer ruling on this matter until the class certification hearing. However, the choice of law issue presented at this time is simply whether the Court should apply the law of the state in which Budget is headquartered to all members of the class, or apply the law of each state in which the class members rented the vehicles at individual Budget rental facilities.[2] No additional evidence is necessary to answer this choice of law question, so additional discovery will not be of assistance to the parties. Furthermore, the resolution of the instant Motion to Dismiss depends

---

concludes that the Plaintiffs' Complaint could not survive dismissal under either the new standard or the one in place at the time of filing, it is not necessary to require the parties to submit briefing addressing the new standard or to grant Plaintiffs leave to amend their pleadings to satisfy the new standard.

[2] Because a class has not been certified in this action, the Court's conclusions as to choice of law are applicable only to the Plaintiffs currently named in the action: Berry and John.

3

upon the Court first determining this fundamental choice of law question. Therefore, the Court addresses it at this time.

A federal court sitting in diversity must look to the choice of law rules of the forum state when determining which law should apply to a claim. <u>Trumpet Vine Investments v. Union Capital Partners</u>, 92 F.3d 1110, 1115 (11th Cir. 1996) (*citing* <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)). Florida applies the "most significant relationship" test in determining choice of law, as articulated in the Restatement (Second) of Conflict of Laws. <u>Trumpet Vine Investments</u>, 92 F.3d at 1115-16. The general choice of law principle under the Restatement for torts provides that the Court take into account the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971).

The Restatement also provides specific choice of law principles for fraud and misrepresentation claims, which the Eleventh Circuit held in <u>Trumpet Vine</u> would also be applied in Florida courts, in addition to the Section 145 contacts. Restatement Section 148 provides as follows:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
>> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

4

>   (b)     the place where the plaintiff received the representations,
>
>   (c)     the place where the defendant made the representations,
>
>   (d)     the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
>   (e)     the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
>   (f)     the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971) (*cited in* Trumpet Vine, 92 F.3d at 1118.) Accordingly, the Court considers Sections 145 and 148 contacts together, as they overlap substantially. See Topp, Inc. v. Uniden America Corp., 2007 U.S. Dist. LEXIS 31204, *11 (S.D. Fla. 2007).

A consideration of the Sections 145 and 148 contacts persuades this Court that it should apply the law of the state in which each Plaintiff rented a vehicle, rather than the law of New Jersey, the state in which Budget is headquartered. The Defendant made, and Plaintiffs received, the alleged misrepresentations at each individual Budget rental center when Plaintiffs rented the vehicles. Plaintiffs acted in reliance upon the alleged misrepresentations in those states, and Plaintiffs are domiciled in those states. The place where the tangible thing which is the subject of the transaction–the rental vehicle–is located, for each rental, is the state in which it was rented. Finally, Plaintiffs were each to render performance under the rental contract in the states in which they rented the vehicles. Although Defendant Budget is headquartered in New Jersey, this

5

one factor alone cannot overcome the weight of the other factors.³ Plaintiffs point to several cases from the New Jersey courts in support of their argument that the Court should apply New Jersey law because the alleged fraudulent scheme emanated from New Jersey, where Budget is headquartered. While it may be that New Jersey intended its consumer fraud statute to apply to fraudulent schemes affecting consumers in other jurisdictions, and a federal district court in New Jersey would decide this choice of law issue differently, this Court is obligated to follow the choice of law standards of the state in which it sits. Florida choice of law standards dictate that the Court not apply the law of New Jersey, regardless of what New Jersey law may hold. Accordingly, Plaintiff's claim under New Jersey law will be dismissed for failure to state a claim upon which relief can be granted. However, because this dismissal is solely predicated upon Florida choice of law standards, and thus does not bear upon the substantive sufficiency of the claims under New Jersey law, this dismissal is without prejudice.

---

³ Of all the cases Plaintiffs cite in support of the proposition that courts apply the law of the state in which the Defendant resides in fraudulent misrepresentation cases, only Cunningham v. PFL Life Ins. Co. included an application of Florida choice of law principles. See 42 F. Supp. 2d 872 (N.D. Iowa 1999). Furthermore, in Cunningham, the contacts with the company's principal place of business were much more significant than those in the instant case. There, the insurance policies at issue were written in Iowa, the defendant's principal place of business and that of its subsidiaries was Iowa, and the fraudulent scheme and all management-level policies issued from Iowa. Id. at 883. Further, the court in Cunningham at least partially relied upon the fact that because the class members were split between two states, the importance of the non-Iowa contacts was even further diluted. Id. at 883-84. In contrast, courts in the Southern District of Florida have specifically declined to rely upon class allegations in making choice of law determinations. See In re Managed Care Litigation, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003). In that case, Judge Moreno emphasized that a state's laws are presumptively territorial, and that "these are fundamental substantive limits on the scope of state regulatory jurisdiction–limits that the procedural vehicle of a class action cannot justify transgressing." Id. (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821 (1985). Accordingly, this Court does not find Cunningham persuasive.

## IV. FLORIDA CLAIM (COUNT II)

In Count II of the Complaint, Plaintiffs allege a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), based on allegations regarding Plaintiff Berry's rental of a vehicle at a Budget location in Florida. The Act declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla Stat. §501.204 (2007). The Act also provides that in construing this language, courts should look to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act. Id.

As a threshold matter, Defendant Budget argues that Plaintiffs have not met the heightened pleading requirements of Fed. R. Civ. P. 9(b). As Plaintiffs accurately point out, some courts have found that the heightened pleading requirements of Rule 9(b) do not apply to causes of action under FDUTPA because Rule 9(b) applies only to claims for fraud, and conduct short of actual fraud can constitute a violation of the statute. See Motmanco v. McDonald's Corp., 2005 WL 1027261, *8 (M.D. Fla. 2005) ("While fraud may be actionable under the FDUTPA, proof of misrepresentation or deceit sufficient to constitute fraud is not a necessary element in all causes of action brought under the FDUTPA"). Regardless, even under the heightened pleading requirements of Rule 9(b), Plaintiffs' pleadings are adequate. The Complaint clearly and concisely sets out the facts alleged: when and where the Plaintiffs rented vehicles from Budget, that the Plaintiffs paid a cost recovery fee, and details regarding that fee. The Court sees no need for additional particularity.

Turning to the substance of Plaintiffs' allegations, the Court notes first that the

simple fact of the CRF, and its itemization as a separate charge, is not unfair or deceptive because it was clearly disclosed at the time of the rental, and Plaintiff has provided no case law to indicate the contrary. In fact, Defendant cites cases from California and Washington where courts affirmed that the simple itemization of a fee, charged in addition to the base rental rate and disclosed to customers, was not a violation of the consumer protection statutes of those states. See Speyer v. Avis Rent a Car Systems, 415 F. Supp. 2d 1090, 1100 (S.D. Cal. 2005); Robinson v. Avis Rent a Car System, 22 P.3d 818, 826 (Wash. Ct. App. 2001).

However, Plaintiffs also point to other case law addressing a different question: whether a company violates the Act when it represents to a customer that a separate fee is to be paid for a particular purpose, then fails to use the fee for that purpose or retains some portion of the fee for itself. See Latman v. Costa Cruise Lines, 758 So.2d 699 (Fla. 3d DCA 2000). In Latman, the plaintiffs alleged that the Act was violated when the cruise line charged a "port charge" in excess of the amount that was actually paid out to third parties, and kept a portion for itself. The court concluded that this was a deceptive practice under the Act, analogizing it to a situation in which a company systematically overcharges customers for state sales tax, keeping a portion of the amount paid for itself, which would clearly violate the Act. Id. at 703. The court further concluded that the relevant inquiry is how a reasonable consumer would interpret the term "port charges," which "necessarily constitutes a representation to a reasonable consumer that these are 'pass-through' charges which the cruise line will pay to the relevant port authority." Id. Finally, the court held that reliance and damages were adequately shown by the fact that passengers parted with money for what should have

8

been a pass-through port charge, but which was kept, at least in part, by the cruise line. Id.

In the instant case, however, Plaintiffs make no allegations that the CRF is anything analogous to a pass-through charge, like a port fee or sales tax. On the contrary, the term "cost recovery fee" itself implies that the company will keep the money collected as "recovery" for its costs. Plaintiffs do allege that the cost recovery fee is purportedly charged for the purpose of recouping Budget's cost of licensing and registering its fleet of rental vehicles, but that the amount of the fee far exceeds the actual cost of licensing and registration. (Complaint, p. 3 [DE 1].) However, in Latman, it was not the excess amount of the fee that was deceptive, but rather the fact that the company charged what appeared to be a pass-through fee for a third-party but retained a portion for itself. No such allegations have been made in this case.[4]

Plaintiffs further argue that the Defendants' practices are deceptive because by itemizing the CRF, they are advertising a lower rental rate than is actually being offered, deceiving consumers into believing that Budget provides more affordable rentals than its competitors. However, if that were the case, it would be the advertising that is deceptive for failing to disclose the CRF, and Plaintiffs have made no allegations whatsoever regarding advertising they saw or relied upon. Simply put, Plaintiffs argue

---

[4] Plaintiffs do allege in the Complaint that the Budget Web site describes the purpose of the CRF's as recovery of licensing and registration fees for its fleet of vehicles. However, Plaintiffs make no allegation that this representation was relied upon, or even viewed, by any of the Plaintiffs. According to the allegations, the Plaintiffs relied only upon the rental agreements, which clearly disclose and itemize the "cost recovery fee" and make no further representations as to the purpose or specific use of that fee by the company.

9

extensively that the CRF is deceptive because it hampers consumers' ability to comparison shop, but the Complaint is entirely devoid of allegations regarding any advertisements or descriptions of the CRF's purpose that Plaintiffs relied upon. This failure is ultimately fatal to their claim, because even under Plaintiffs' theories, it would be the advertising that is deceptive, not the simple existence of the CRF.

Even taking all of the Plaintiffs' allegations as true, they simply do not allege a violation of FDUTPA under any of the legal theories proposed. Accordingly, Count II of the Complaint will be dismissed for failure to state a claim upon which relief can be granted.

## V.     NORTH CAROLINA CLAIM (COUNT III)

In Count III of the Complaint, Plaintiffs allege a violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), based on allegations regarding Plaintiff John's rental of a vehicle at a Budget location in North Carolina. The NCUDTPA prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1 (2007). In order to succeed on a claim under this statute, a plaintiff need not show fraud, bad faith, deliberate or knowing acts of deception, or actual deception; however, plaintiff must show "that the acts complained of possessed the tendency or capacity to mislead or created the likelihood of deception." Chastain v. Wall, 337 S.E.2d 150, 153-54 (N.C. 1985).

The parties have not provided, and the Court has been unable to find, any cases in North Carolina addressing the question of whether an additional fee, such as the CRF complained of in this case, is unfair or deceptive under the Act. However, the

North Carolina Act and the Florida Act are quite similar, both look to federal interpretations of the Federal Trade Commission Act,[5] and both apply similar standards of unfairness. Compare Samuels v. King Motor Co. of Ft. Lauderdale, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) with Huff v. Autos Unlimited, 477 S.E. 2d 86, 88 (N.C. App. 1996). Accordingly, the rationale articulated above for dismissing the Florida claims applies equally to the North Carolina claims. There is no legal authority to indicate that the simple unbundling and itemization of the CRF is unfair or deceptive under North Carolina law, and Plaintiffs have made no allegations regarding any advertising or published explanation of the CRF that Plaintiffs relied upon or were deceived by. Accordingly, Count III of the Complaint will be dismissed for failure to state a claim upon which relief can be granted.

## VI: SUBSTANTIALLY SIMILAR CONSUMER FRAUD LAWS (COUNT IV)

Plaintiffs also raise claims in their Complaint under "the substantially similar consumer fraud laws of certain states." They point to the laws of a number of states as being substantially similar to the New Jersey, North Carolina, and Florida statutes. First, this claim must be dismissed because of this Court's choice of law determination. As discussed above, the law of the states in which Plaintiffs, Berry and John rented the vehicles–North Carolina and Florida–is applicable to their respective claims. Because a

---

[5] Although decisions construing the Federal Trade Commission Act are not controlling in North Carolina, they do "furnish guidance to courts interpreting the North Carolina statute." Hageman v. Twin City Chrysler-Plymouth, 681 F. Supp. 303, 306 n.1 (M.D. N.C. 1988). Likewise, in Florida, the statute provides that in construing this language, courts should look to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act. Fla Stat. §501.204 (2007).

nationwide class has not been certified, and no named Plaintiffs in this action rented vehicles in any of these other states, the Court should not pass upon the question of whether these states' statutes would be violated by the facts alleged in the Complaint. Thus, the Court concludes that the substantially similar consumer fraud laws of other states are not applicable to the claims of Plaintiffs Berry and John, and this claim will be dismissed with prejudice as to these two Plaintiffs.

### VII. UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED (COUNTS V and VI)

In the final two counts of the Complaint, Plaintiffs seek to recover under the quasi-contractual theories of unjust enrichment and money had and received. Although unjust enrichment is often described as being "equitable in nature," this cause of action was actually part of the action of assumpsit, which was an action at law under the common law. Commerce Partnership 8098 Limited Partnership v. Equity Contracting Company, 695 So.2d 383, 390 (Fla. 4th DCA 1997). Therefore, such a claim is actually an action at law to enforce a quasi-contract. Florida courts have held that "an unjust enrichment cannot exist 'where payment has been made for the benefit conferred.'" Id. at 388. In Count V of the Complaint, Plaintiffs allege that Budget retained a benefit in the form of the amounts paid for the CRFs to the detriment of the Plaintiffs, but they make no allegations as to anything Budget was obligated to do, and failed to do, in exchange for that benefit. Furthermore, as Defendant argues, a quasi-contractual claim fails upon a showing that an express contract exists. See Thunderwave v. Carnival Corp., 954 F. Supp. 1562, 1566 (S.D. Fla. 1997). Plaintiffs submitted a copy of the rental agreement, an express contract, with their Complaint in this action. This

agreement clearly shows that Plaintiffs agreed to pay the rental charges, including the CRF, in exchange for the use of the vehicle for a specified period of time. Plaintiffs argue that because the equitable claims are rooted in Budget's fraudulent behavior, not the contract itself, the existence of the contract should not bar relief under their theories of unjust enrichment and money had and received. However, this argument fails to note that a claim of unjust enrichment does not simply grant the Court license to exercise its equitable powers, and indeed is not even grounded in those equitable powers. This remedy is a legal one, and it necessarily calls upon the Court to imply a contractual obligation where there otherwise is none. The Court cannot do so if a contract is already in place that directly addresses the matter complained of–here, the CRF. Furthermore, the Court sees no basis on which to imply additional contractual obligations given the limited and benign allegations in the Complaint. Because a contract already exists, and the Court declines to imply one, Plaintiffs' claim of unjust enrichment in Count V of the Complaint must be dismissed.

Plaintiff also raises a claim under a theory of money had and received in Count VI of the Complaint. Florida law recognizes the general rule that "an action for money had and received, currently treated as an action for restitution, can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion or undue advantage." Central Bank & Trust Co. v. General Finance Corp., 297 F.2d 126, 129 (5th Cir. 1961). This quasi-contractual action[6] is maintained based on "the fiction of an implied promise to repay." Marshall-

---

[6] Like unjust enrichment, money had and received was traditionally an action at law where the allegedly fraudulent transfer was of cash. 381651 Alberta, Ltd. v.

Shaw v. Ford, 755 So.2d 162, 164 (Fla. 4th DCA 2000). "The thought behind that cause of action is that, *in the absence of evidence of some express specific agreement*, the law will assume that one who receives and holds money that belongs to another has impliedly assumed the obligation of returning it and is, accordingly, in law indebted to the owner for it." Williams Management Enterprises v. Buonauro, 489 So.2d 160, 168 (Fla. 5th DCA 1986) (emphasis added). The mere fact that an overpayment has been demanded and payment was made will not support an action for money had and received. Hall v. Humana Hosp. Daytona Beach, 686 So.2d 653, 656 (Fla. 5th DCA 1996).

As articulated above, the presence of an express contract precludes recovery on a quasi-contractual remedy such as money had and received. Furthermore, as the Court reads the Complaint, Plaintiffs' primary argument is that Budget charged too much for the CRF, and the mere fact that overpayment was made for something does not support a claim. See Hall, 686 So.2d at 656. Plaintiffs must allege some fraud or imposition through which the money was obtained, and they have failed to do so. At most, they allege that the Budget Web site states that the CRF is to be paid for one reason, and Budget actually uses the money for another reason, but no allegations are made that any Plaintiffs ever even saw this description of the fee. Without something more than the sole allegation that the CRF charged is too much, Plaintiffs cannot prevail on an action for money had and received, and so Count VI of the Complaint will be dismissed.

---

279298 Alberta, Ltd., 675 So.2d 1385, 1390 (Fla. 4th DCA 1996).

## VIII. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Complaint [DE 16] is **GRANTED**.

2. Count I of the Class Action Complaint [DE 1] is **DISMISSED without prejudice**.

3. The remaining Counts of the Class Action Complaint are **DISMISSED with prejudice**.

4. Any pending motions are **DENIED as moot**.

5. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 16TH day of July, 2007.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record